WILLIAM SMITH vs. CARMEN C. MASSIMIANO, JR.,[1] &
others.[2]

Berkshire. March 5, 1992. - January 4, 1993.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil*, Summary judgment, Complaint.

A motion for summary judgment under Mass. R. Civ. P. 56 was not an
appropriate means for testing whether the plaintiff's complaint was suf-
ficient to state a viable claim. [85]

Where the sole affidavit filed by defendants in support of their motion for
summary judgment under Mass. R. Civ. P. 56 did not establish the
absence of any genuine issue of material fact, or otherwise demonstrate
that the plaintiff had no reasonable expectation of proving an essential
element of his case, it was error for a judge to allow the motion on the
ground that the plaintiff had failed to present affirmative proof at that
stage of the proceeding. [85-87]

CIVIL ACTION commenced in the Superior Court Depart-
ment on December 13, 1989.

The case was heard by *William W. Simons*, J., on a mo-
tion for summary judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

The case was submitted on briefs.

*William Smith*, pro se.

*Barry M. Ryan & Christopher M. Browne* for the
defendants.

O'CONNOR, J. The plaintiff, William Smith, who was not
represented by counsel below and is unrepresented on appeal,
seeks damages for injuries he claims to have sustained while,

[1]Individually and as sheriff of Berkshire County.

[2]John Doe(s), Berkshire County house of correction staff, and Berkshire
County commissioners, all individually and as public employees.

as a pretrial detainee, he was housed with convicted criminals at the Berkshire County house of correction in violation of G. L. c. 127, § 22 (1990 ed.). A judge in the Superior Court ordered summary judgment for all the defendants in their individual capacities and as public employees. The plaintiff appealed, and we transferred the case to this court on our own initiative. We now reverse the judgment and remand this case to the Superior Court for further proceedings.

The plaintiff's complaint states in relevant part the following: The plaintiff was a pretrial detainee in the defendants' custody at the Berkshire County house of correction. He was housed with convicted criminals in violation of law and despite his repeated assertions that he was entitled to be housed only with other pretrial detainees. The defendants knew that "housing pre-trial detainees with sentenced prisoners in the sentenced prisoner portions of Berkshire House of Corrections, had previously caused several injuries to pre-trial detainees." On an occasion when the plaintiff was working in the section housing convicted criminals, "he was *seriously* injured when a heavy footlocker was thrown at him off a tier by a sentenced prisoner striking him in the upper right shoulder" (emphasis in original).

As further alleged in the complaint, the plaintiff is black and, at the time of his injury, all the sentenced prisoners at the Berkshire County house of correction where the plaintiff was assigned to work were white, as are the defendants. "Upon information and belief," the complaint continues, the defendants "who coerced and ordered plaintiff to (a) be housed in a section of the jail for sentenced prisoners, and (b) ordered plaintiff to work in an area where only sentenced (caucasian) prisoners were at the time did so intentionally due to their racial prejudice knowing plaintiff was going to be seriously injured . . . Defendant Carmen C. Massimiano's actions in allowing pre-trial detainees to be housed and to work in areas where sentenced (dangerous) prisoners are housed, was intentional . . . All other John Doe defendants acts and omissions were intentional and knowingly done . . . Defendant County Commissioners failure to provide ade-

quate protection and housing for pre-trial detainees, separate from sentenced prisoners, in individual cases such as plaintiffs, was grossly negligent or intentional (due to Commissioners intentionally diverting those necessary funds and resources elsewhere)." The complaint's allegations were followed by prayers for relief.

The defendants filed an answer to the complaint, denying some allegations and neither admitting nor denying many others, and asserting numerous affirmative defenses. The defendant Massimiano filed interrogatories to the plaintiff which were never answered. Then, approximately fourteen months after the complaint and answer were filed, and without any further pleadings, depositions, answers to interrogatories, or admissions having been filed, the defendants moved for summary judgment under Mass. R. Civ. P. 56, 365 Mass. 824 (1974). The defendants' motion was supported by one affidavit and by a memorandum of law that was directed to the proposition, as summarized in the memorandum's "conclusion," that "[t]he [p]laintiff has failed to present a claim upon which relief can be granted against the named [d]efendants." The affidavit in support of the defendants' motion was that of Peter Menard, a county commissioner, and it addressed only the allegation, at least implied, in the plaintiff's complaint, that the defendant commissioners had improperly diverted funds that had been appropriated for the use of the house of correction.

According to the docket entries, on the day the defendants' motion was filed, the plaintiff filed a "cross-motion" for summary judgment together with a memorandum of law and his personal affidavit to which numerous exhibits were attached. One week later, without stating his reasons, a judge allowed the defendants' motion, entered summary judgment for the defendants, and denied the plaintiff's cross motion. In keeping with the notice of appeal filed by the plaintiff, the present appeal is solely "from the Court's allowance of Defendants' Motion for Summary Judgment." The plaintiff's cross motion is not in issue.

In support of their contention that they are entitled to summary judgment, the defendants' appellate brief sets forth numerous arguments which we briefly outline in this and the next three paragraphs. "In order to state a cognizable claim pursuant to 42 U.S.C. § 1983," the defendants argue, "a plaintiff must allege or present specific facts which show the defendants, while acting under color of state law, deprived him of rights, privileges or immunities secured by the Constitution or laws of the United States," and "there is no factual basis" in this case for such a claim. In furtherance of this argument, the defendants say that "the [p]laintiff is essentially alleging that the [d]efendants had a duty or obligation to protect him from potential harm by other inmates," but "there is no evidence" to support the plaintiff's allegation. The defendants then argue that, "[a]ssuming the defendants had a duty to protect there is no evidence that the defendants were intentionally, wilfully or deliberately indifferent to the personal security of the plaintiff," and therefore the plaintiff cannot recover damages under § 1983. In addition, the defendants say that "the record is totally devoid of any evidence of bad faith or improper motive on the part of the [d]efendants."

In two other sections of their brief, the defendants assert that (1) "assuming the plaintiff is alleging State civil rights claims pursuant to G. L. c. 12, §§ 11H and I, the complaint fails to state a cognizable claim and was properly dismissed as a matter of law," and (2) "the plaintiff's complaint fails to state a claim under 42 U.S.C. § 1983 for failure to provide medical treatment."

On the question whether the defendants were entitled to qualified immunity from suit pursuant to 42 U.S.C. § 1983 (1988) and G. L. c. 12, §§ 11H and 11I (1990 ed.), the defendants' brief argues that the defendants are entitled to immunity because "[t]he [p]laintiff has failed to introduce evidence to establish that: 1) the [d]efendants violated the [p]laintiff's rights; 2) the right he seeks to vindicate was clearly established such that the [d]efendants knew or should have known of it at the time of the alleged wrong; and 3)

that the [d]efendants were acting in an objective bad faith manner at the time of the alleged wrong."

Lastly, the defendants argue that the plaintiff's claims against the so-called "John Doe" defendants were "properly dismissed" because "the use of a fictitious name for a defendant will not be permitted if ignorance of the defendant's identity is the result of . . . lack of reasonable inquiry." The defendants impliedly assert that the plaintiff failed to produce evidence to show that his use of fictitious names was reasonable in the circumstances.

It is apparent that the defendants' argument in support of their entitlement to summary judgment is based on their claim that the plaintiff's complaint failed to state a claim on which relief can be granted, and on the further assertion that, in response to the defendants' motion for summary judgment, the plaintiff produced "no evidence" demonstrating that he has a triable case. We reject these contentions.

The sufficiency of a complaint to state a viable claim may be tested by motions pursuant to Mass. R. Civ. P. 12 (b) (6) and 12 (c), 365 Mass. 754 (1974) — motions that were not presented in this case. However, a complaint is not properly challenged by a motion for summary judgment under rule 56. Indeed, a summary judgment motion "concedes the validity of the pleading," J.W. Smith & H.B. Zobel, Rules Practice 347 (1977 & 1993 Supp.), and, unlike rule 12 motions, focuses on the merits of the controversy. Therefore, the defendants were not entitled to summary judgment on the ground that the complaint was defective.

Also, for the reasons we state below, the defendants were not entitled to summary judgment on the ground that the plaintiff had failed to produce evidence of deliberate indifference or bad faith or other facts. The plaintiff had no burden to do so. Since the defendants were the moving parties, they had the burden under rule 56 (c) "to show by credible evidence from [their] affidavits and other supporting materials that there is no genuine issue of material fact and that [they are] entitled, as matter of law, to a judgment. See 6 J. Moore, Federal Practice par. 56.15[3] (2d ed. 1975). Rule

56 (e) provides that once a motion is made and supported by affidavits and other supplementary material, the opposing party may not simply rest on his pleadings or general denials; he must 'set forth *specific facts*' (emphasis added [by the court]) showing that there is a genuine, triable issue. Rule 56(e). The inference to be drawn from the burden placed on the moving party is that his failure to establish the absence of a genuine issue of material fact must, without more from his opponent, defeat his motion." *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 554 (1976). In the same vein, we held in *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991), that "a party moving for summary judgment in a case [such as this one] in which the opposing party will have the burden of proof at trial is entitled to summary judgment *if he demonstrates by reference to material described in Mass. R. Civ. P. 56 (c)*, unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party's case. To be successful, a moving party need not submit affirmative evidence to negate one or more elements of the other party's claim" (emphasis added). The fact that a moving party need not submit affirmative evidence to negate one or more elements of the other party's claim does not excuse the moving party from demonstrating by reference to rule 56 (c) materials, that the party who will have the burden of proof at trial has no reasonable expectation of carrying it. In *Kourouvacilis*, the moving party made such a demonstration by presenting materials that showed that the evidence the plaintiff relied on to prove her case at trial would be unavailable. *Id.* See also *Manning* v. *Nobile*, 411 Mass. 382, 389 (1991); *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 809 (1991). Here, the defendants filed a single affidavit and no other rule 56 materials to demonstrate that there would be no genuine issue of material fact at trial and that they would be entitled to judgment as a matter of law. The affidavit, which addressed only the question of diversion of funds, did not demonstrate that the plaintiff would be unable to prove his case at trial, and therefore the plaintiff, in

order to avoid summary judgment, was not obligated to present countervailing proof at that time.

We conclude that the summary judgment for the defendants must be reversed, and the case remanded for further proceedings.

*So ordered.*